**BOSTWICK–BATTERSON COMPANY**

v.

**UNITED STATES.**

No. 305–58.

United States Court of Claims.

Dec. 1, 1960.

Edwin J. McDermott, Philadelphia, Pa., for plaintiff.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Cyril Moscow, Washington, D. C., was on the brief.

WHITAKER, Judge.

On September 4, 1953, plaintiff was awarded a contract for the manufacture of 165,000 pairs of khaki Army trousers. The contract was performed by plaintiff's subcontractor, Keystone Coat & Apron Mfg. Corp., which is hereinafter referred to as Keystone. This suit arises out of plaintiff's claim for increased costs resulting from packing difficulties and an assessment by defendant against plaintiff for the use of government furnished materials in excess of the contract allowances.

We shall consider first plaintiff's claim arising out of the packing difficulties.

The specifications required that the trousers be packed in cartons, the dimensions of which were set out in the specifications, and that the cartons be placed in wire-bound wooden boxes, five to the box. The dimensions of the wire-bound boxes were also set out in the specifications. When Keystone began packing the first block of 8,000 trousers in December 1953, it was unable to fit five filled cartons into each wire-bound wooden box, as required by the specifications. After having been apprised of the packing difficulties, defendant's representatives investigated the problem and orally authorized plaintiff, later confirmed by telegram of December 17, 1953, to pack only four cartons in each wire-bound box. Thereupon, packing proceeded and the first shipment of 6,400 pairs of trousers was made on December 17, 1953.

The packing requirements were further modified by a letter dated January 5,.

1954, to plaintiff which specified a different size of carton.

On May 8, 1957, after consideration of plaintiff's claim for an adjustment because of the error in the specifications and the change in the size of the cartons, the contracting officer decided that plaintiff was entitled to $1,299.77 as an equitable adjustment. This total was made up of $907.50, the cost of 825 additional wire-bound wooden boxes, and $23.98 transportation charges; $187.45, increased cost of the substitute cartons; and $180.84 as the labor cost of packing the additional containers. Plaintiff's claim for overhead was denied as inadequately established, and its claim for damages flowing from the defect was denied as not attributable to the change in specifications.

On May 13, 1957, plaintiff appealed to the Armed Services Board of Contract Appeals. The Board affirmed the contracting officer, but also found that plaintiff was entitled to 4 percent of the $180.84 packing and labor cost, amounting to $7.23, as an allowance for payroll taxes and fringe benefits. The Board then added what it called a general and administrative allowance, computed by applying plaintiff's experience of 6.89 percent of "sales" as plaintiff's general and administrative expenses, amounting to $90.05, making total costs of $1,391.05. To this the Board added a 4.02 percent profit allowance of $56.16, making the total amount of the adjustment for the change of $1,453.21, which was paid to the plaintiff pursuant to the Board's findings.

The temporary inability to pack trousers caused a backlog of four days' production (12,060 pairs) to accumulate in Keystone's packing department. The Trial Commissioner found that the Board of Contract Appeals had overlooked an item of $252, the wages of nine additional persons required to catch up on the backlog. Defendant does not dispute this allowance. The Trial Commissioner also found that plaintiff was entitled to an overhead allowance of 53 percent of direct labor plus an allowance of 4.02 percent of labor and overhead for profit, making a total of $500.70. No deduction from the total was made for the overhead and profit allowance made by the Board.

We think that the Trial Commissioner was in error in allowing 53 percent of direct labor for overhead, amounting to $229.35. The Board allowed $97.28, and plaintiff was paid this amount. There is no evidence that the Board acted unfairly or arbitrarily in its determination.

However, plaintiff is entitled to an allowance for overhead on the $252 increased labor cost due to the defect in specifications. At the rate found by the Board for payroll charges and general and administrative expenses, which we think was reasonable, plaintiff is entitled to $10.08 to be added to the $252 for payroll charges, and $18.06 for general and administrative expenses, making a total of $280.14. Plaintiff is not entitled to any allowance for profit. Defendant's failure to furnish adequate packing specifications was a breach of contract; plaintiff is not entitled to profit on the amount of the damage resulting therefrom. Torres v. United States, 112 F.Supp. 363, 126 Ct.Cl. 76, 79.

We now turn to plaintiff's claim for refund of amounts assessed against it for excess usage of government furnished materials, which is the basis of defendant's counterclaim.

In March 1954, $2,848.80 was deducted from the final invoice submitted by plaintiff to cover usage of cloth and buttons furnished by the defendant in excess of the contract allowances. By December 1954, defendant had allowed plaintiff further credits on account of material returned, resulting in a deduction of $683.27 instead of $2,448.80. However, defendant discovered an error in its computation and found that the correct balance for excess materials used was $759.98, and, therefore, there was due from plaintiff $76.71, which had not been withheld. On May 3, 1955, the Philadelphia Quartermaster Depot wrote plaintiff in pertinent part as follows:

"The Contracting Officer has determined your company be held pecuniarily liable to the Government in the amount of $759.98 to cover the value of Government Furnished Property used in excess of authorized allowances, * * *.

\* \* \* \* \* \*

"Since the sum of $683.27 has been withheld in partial satisfaction from payments due under subject contract, request check for the balance of $76.71 made payable to the Treasurer of the United States, be furnished this agency for proper adjustment of your account."

In reply to the Depot's letter, plaintiff wrote on June 10, 1955, requesting a check for $683.27, the sum which defendant had withheld, claiming that it had not used this much material. However, by letter dated June 23, 1955, the contracting officer notified plaintiff as follows:

"Reference is made to your letter dated 10 June 1955.

"A review of the records of this office indicates that you previously raised the question of clarification of allowances in your letter of 4 August 1954.

"In letter dated 17 August 1954, the allowances for Cloth, Cotton, Uniform Twill, and 22 line buttons were outlined for you based on 165,000 units. It is to be noted that allowances as indicated in letter of 3 May 1955 are based on 165,147 units accepted for payment. In this connection, you were notified 3 May 1955 of the excess usage valued at $759.98.

"Since the sum of $683.27 was withheld from payments due under subject contract, it is requested that you remit your certified check or money order for the balance due of $76.71 made payable to the Treasurer of the United States."

Thereafter, and until December 3, 1957, no further action was taken with respect to the matter by either party. However, on December 3, 1957, plaintiff's attorney wrote the successor contracting officer requesting a determination of the plaintiff's rights. On December 9, 1957, the successor contracting officer replied by letter stating that plaintiff's failure to appeal from the contracting officer's determination of June 23, 1955, made that determination final after the 30-day period for appeal had expired. The following day, December 10, 1957, plaintiff filed an appeal with the Armed Services Board of Contract Appeals from the decision of the contracting officer as set forth in his letter of December 9, 1957. But the Board dismissed the appeal on the ground that the contracting officer's letter of June 23, 1955, was a final determination from which plaintiff had failed to appeal within the 30 days allowed by the contract.

The evidence at the trial of this case disclosed that after all adjustments for cloth and buttons used in the performance of the contract, and for cloth and buttons returned, there was a net saving to defendant of $85.17 over the amount withheld. However, plaintiff cannot claim payment for the saving, but only for the $683.27 which defendant withheld from plaintiff. Defendant does not contest the fact that there were net savings to it of $85.17, and that plaintiff would be entitled to the $683.27 withheld, if it had appealed from what it claims was a decision of the contracting officer on June 23, 1955.

█ We do not think the letter of June 23, 1955, was sufficient under the contract and under Army regulations to amount to a final decision, including findings of fact and notice, under the disputes clause. Keystone Coat & Apron Mfg. Corp. v. United States, No. 524–56, decided June 8, 1960.[1]

---

1. The plaintiff in this case was the same company as plaintiff's subcontractor in the present case. Defendant's motion for summary judgment on the ground that a letter from the contracting officer demanding payment was a decision under

Army Procurement Procedure, § 596.-103–12(b) (3) (i),[2] promulgated September 9, 1954, required the contracting officer to furnish the contractor with findings of fact and include in his decision a paragraph advising thhe contractor of his right to appeal. The letter of June 23, 1955, did not comply with the regulations and, hence, cannot be treated as a final decision of the contracting officer. Poloron Products, Inc. v. United States, 116 F.Supp. 588, 126 Ct.Cl. 816, was decided before the promulgation of these regulations.

Plaintiff is entitled to judgment for $280.14 as damages for the error in packing specifications and $683.27, the amount which the defendant erroneously withheld, or a total of $963.41. Judgment for this amount will be entered.

Defendant's counterclaim will be dismissed.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE, and MADDEN, Judges, concur.

---

the disputes clause of the contract from which plaintiff failed to appeal within the 30 days allowed by the contract was overruled, this court holding that under the contract and Naval regulations, the letter of the contracting officer was not a final decision.

2. 32 C.F.R. § 596.103–12(b) (3) (i) (1954) reads in part:

"In rendering a decision on any dispute involving a question of fact, the Contracting Officer or the Head of a Procuring Activity, as the case may be, will prepare and sign findings of fact, a true copy of which was his written decision will be promptly furnished the Contractor. The Contracting Officer will include in his decision the following paragraph:

" 'If in your opinion the findings and decision hereinbefore set forth involve a dispute concerning a question of fact, you are hereby notified that in accordance with the provisions of Clause ——, "Disputes" of the above numbered contract you may appeal from these findings and decision to the Secretary of the Army. * * *' "