**TRANSAMERICA INSURANCE CORPORATION, INC., For and on Behalf of STROUP SHEET METAL WORKS, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–3911C.**

United States Court of Federal Claims.

May 14, 1993.

Victoria H. Tobin, Atlanta, GA, for plaintiff.

Arnold M. Auerhan, Washington, DC, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant. Susan Weston, U.S. Army Corps of Engineers, of counsel.

## *ORDER*

NETTESHEIM, Judge.

This case is before the court on plaintiff's motion to exclude expert witnesses and to limit issues at trial.[1] Argument is deemed unnecessary. In a prior bench ruling, the court dismissed the complaint for lack of subject matter jurisdiction. The Federal Circuit reversed and remanded the case to the court for further proceedings. Plaintiff's motion is brought incident to the pretrial conference.

### FACTS

Although the facts of this case are adequately recited in the Federal Circuit's opinion, *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572 (Fed.Cir.1992), a summary recitation of the relevant facts is necessary to provide background for deciding plaintiff's motion. Other relevant facts may be found in the discussion.

Stroup Sheet Metal Works ("plaintiff") is a roofing subcontractor based in Asheville, North Carolina. In 1988 Bodenhamer Building Corporation ("BBC") bid on a Fort Bragg, North Carolina schoolhouse construction contract. As part of the estimating process, BBC asked plaintiff to submit a bid for certain roofing-related work. Plaintiff submitted a bid in alleged reliance on an erroneous roof scale contained in the bid documents prepared by the Government.[2] After receiving the contract award,

---

1. As part of its motion, plaintiff moved for partial summary judgment on the issue of reliance. The court ordered expedited briefing on the motion, which will be resolved at the forthcoming pretrial conference.

2. This is the subject of the summary judgment motion filed by plaintiff.

BBC and plaintiff entered into a subcontract for roofing-related work.

Thereafter, plaintiff discovered the erroneous scale and requested an equitable adjustment in the amount of $241,919.00 for extra work. On September 1, 1988, plaintiff submitted a certified claim to the contracting officer through BBC. On March 8, 1989, plaintiff submitted a revised cost summary and claim for an equitable adjustment. One week later the contracting officer requested a recertification of the claim. On March 28, 1989, the contracting officer issued a preliminary rejection of the claim, but indicated a willingness to discuss the issue further. On May 18, 1989, plaintiff recertified the claim. On August 8, 1989, plaintiff submitted a revised equitable adjustment claim in the amount of $265,-549.89. On April 13, 1990, the contracting officer issued a unilateral modification in the amount of $179,530.25, partially granting plaintiff's claim for an equitable adjustment. On November 6, 1990, plaintiff filed suit in the court to recover the difference (*i.e.*, $86,019.67, plus interest, attorneys' fees, and costs).

## DISCUSSION

### 1. *Expert witnesses*

Plaintiff moves pursuant to RCFC 37, which provides for court-imposed sanctions for a party's failure to cooperate in discovery. Plaintiff complains that defendant violated RCFC 26(b)(3)(A) and 26(e) by identifying experts after the close of discovery and thereby failing to seasonably supplement interrogatories. Plaintiff asserts that its initial interrogatories requested the names of any experts defendant intended to call at trial. According to plaintiff, defendant represented that it would not call any expert witnesses. On April 12, 1993, the last day of discovery, defendant supplemented its interrogatories to reflect the addition of five expert (*i.e.*, fact and opinion) witnesses.[3] Plaintiff asks the court to exclude these witnesses or, in the alternative, allow plaintiff time to depose the witnesses and retain and prepare counter-witnesses.

The chief problem with plaintiff's argument is that defendant, in fact, did supplement its interrogatory responses to include all the referenced witnesses by the discovery deadline. Defense counsel's facsimile transmission reflects that he sent defendant's supplement on April 12, 1993, the last day of discovery. While it may be true that plaintiff did not receive the supplement before April 13, 1993, that is not what RCFC 26(b)(3) requires. Therefore, the issue becomes whether defendant seasonably supplemented its interrogatory responses. The court finds that it did. However, defendant operates under a misapprehension regarding notice under the Federal Rules of Civil Procedure upon which the rules of the Court of Federal Claims are modeled. The court will discuss each witness separately.

#### a. *John Remion*

■ Defendant's chronology of the dyslexic communication between counsel follows. On March 18, 1993, defendant produced a staff briefing paper purportedly written by Mr. Remion setting forth a legal analysis of defendant's position in the litigation. According to defendant, this alone put plaintiff on notice that Mr. Remion would be called as an expert witness, and, therefore, plaintiff cannot be prejudiced by the April 12, 1993 supplementation. Defendant makes two errors. First, while informal notice may indeed speak to whether or not a party can claim prejudice in a expert interrogatory situation, submitting a two-page report analyzing a claim does not serve to put a party on notice that the author will be called as an expert witness. Secondly, and in any event, the document in question is not clearly authored by Mr. Remion. The document is signed by Homer McBrayer. Mr. Remion is listed as a contact person. A party could not be legitimately "notified" of an expert witness in this oblique fashion.

■ On March 29, 1993, defendant asserts that counsel notified plaintiff's attor-

---

**3.** Defendant represents that it only intends to call three of these witnesses at trial.

ney by telephone of his intention to call Mr. Remion as a witness. According to defendant, the parties scheduled a tentative deposition. Plaintiff's memory differs. According to plaintiff, the conversation was less definite, with no final decision made on the deposition, which defendant claims plaintiff cancelled on April 15, 1993. This vignette put plaintiff on notice of defendant's intentions. Plaintiff concedes that defense counsel suggested deposing Mr. Remion and informed plaintiff's attorney that the witness would testify on the reasonableness of plaintiff's failure to detect error in the plans. Plaintiff artfully retrenches by asserting that no further information was provided. In any event, this episode considerably deflates plaintiff's assertion that counsel had no notice of Mr. Remion prior to the close of discovery.

■ What emerges from this morass is that the court is not in a position to determine when defendant knew it would call Mr. Remion as a witness. Plaintiff has its suspicions which are, in all likelihood, not wide of the mark. The fact, however, is that defendant supplemented its response prior to the close of discovery. Perhaps defendant could have designated the witness earlier, but the record does not admit of a finding such that the court could invoke the drastic sanction of excluding Mr. Remion's testimony. *See, e.g., Freund v. Fleetwood Enters.*, 956 F.2d 354 (1st Cir. 1992) (where plaintiff waited until the eve of trial to inform defendant of the substance of expert's testimony); *Alimenta (USA), Inc. v. Anheuser–Busch Cos.*, 803 F.2d 1160 (11th Cir.1986) (where defendant was unable to depose witness until day before trial).

RCFC Appendix G.V. ¶ 10 b conditions the addition of a witness after the witness list has been filed on making the witness available for discovery. Although this rule does not address a party's failure to seasonably supplement interrogatories, plaintiff should have been alerted that its motion was not likely to achieve success since defendant did not delay its supplementation to the eve of trial. Defendant shall make Mr. Remion available for deposition at plaintiff's earliest convenience.

### b. *Margaret Cregan*

■ As to this witness, defendant again contends that plaintiff should have deduced the witness' existence. According to defendant, Ms. Cregan of the Defense Contract Audit Agency conducted the audit at plaintiff's offices in December 1992. She prepared a report that was forwarded to plaintiff on April 5, 1993. On this basis defendant bases a finding of notice that Ms. Cregan would participate as an expert witness. To be sure, plaintiff perhaps could surmise that Ms. Cregan would be called, but that does not, of itself, constitute notice. Moreover, plaintiff claims that someone other than Ms. Cregan signed the audit report. Given the staff report "prepared" by Mr. Remion, the court is inclined to accept plaintiff's representation.

What saves this witness is that defendant only received the audit report on March 12, 1993. Prior to that date, defendant could not know if it intended to call Ms. Cregan as a witness. Defendant informed plaintiff 31 days later that miss Cregan would be called at trial. In these circumstances a one-month delay in supplementation is not unseasonable, especially considering that defendant was required to evaluate the audit. The court agrees that defendant could have moved more quickly to apprise plaintiff, but the delay does not rise to the egregious level required to exclude a witness. Defendant shall make Ms. Cregan available to plaintiff at plaintiff's convenience.

### c. *Robert Golden*

■ Defendant claims that Mr. Golden is a consultant retained by plaintiff. Defendant asserts that Mr. Golden produced a report for plaintiff in October 1988 and implies that Mr. Golden's report was unfavorable to plaintiff and therefore, was withheld from defendant. For its part plaintiff claims ignorance of Mr. Golden's actual role in the litigation, pointing out that he worked for Transamerica Insurance Corp. and not Stroup Sheet Metal Works. The court accepts plaintiff's counsel's representation as an officer of the court that

plaintiff was ignorant of Mr. Golden's report until March 1993. Nonetheless, it is unclear when defendant decided to call him as a witness. Defense counsel implies, but does not unequivocally state, that he did not discover Mr. Golden's report until March 16, 1993. The court is not ably assisted by the parties with respect to this witness. Plaintiff should have known its case more thoroughly to avoid discovering Mr. Golden's existence and report two months before trial. Defendant should have moved more quickly to inform plaintiff of its intention to call Mr. Golden. The court cannot conclude, however, that Mr. Golden's testimony should be excluded as long as defendant allows plaintiff the opportunity to depose him at plaintiff's convenience.

### 2. Limitation of trial issues

Plaintiff moves to limit issues at trial to whether plaintiff is entitled to additional compensation beyond that which the contracting officer granted in Modification No. 32. According to plaintiff, the court cannot inquire into the underlying basis for the contracting officer's decision to issue a unilateral modification because the modification was not a final decision under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988 & Supp. IV 1992) (the "CDA"). Plaintiff points out that the modification was issued pursuant to the changes clause, 48 C.F.R. (FAR) § 52.243 (1990), and encompassed both compensation due under the contract, as well as correction of erroneous plans and specifications. Moreover, plaintiff argues, the document does not contain indicia of a final decision, such as factual findings and a notification of appeal rights. Plaintiff finally contends "that the contracting officer is deemed to have denied Plaintiff's claim to the extent that it exceeded the unilateral change order since no contracting officer final decision was ever issued...." Plf's Br. filed May 14, 1993, at 18.

Defendant argues that the unilateral modification constitutes the contracting officer's final decision and, as such, is subject to de novo review. Defendant argues that the Federal Circuit's decision in this case

established that plaintiff had, albeit informally, lodged a request for a final decision. Inasmuch as the contracting officer's modification was responsive to that request, it constituted a final decision. Defendant also cites to several Board of Contract Appeals cases holding that a unilateral modification may constitute a final decision if issued in response to a certified request for a final decision.

 A final decision from a contracting officer is a condition precedent to the court's jurisdiction over a claim brought pursuant to the CDA. *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 177, 645 F.2d 966, 967 (1981). If the contracting officer does not issue a final decision within 60 days of the request or notify the contractor of a date within which the decision will issue, the request may be deemed denied. 41 U.S.C. § 605(c)(2), (5). Furthermore, on appeal "the contracting officer's award is not to be treated as if it were the unappealed determination of a lower tribunal which is owed special deference on appeal ... [and a reviewing factfinder may] reduce as well as increase the award made by the contracting officer...." *Assurance Co. v. United States*, 813 F.2d 1202, 1206 (Fed.Cir.1987). Therefore, the issue presented is whether the contracting officer's April 13, 1990 unilateral modification constitutes a final decision. If it does, then the court will review the contracting officer's determination de novo. If it does not, the court must determine whether plaintiff's request was deemed denied. The court concludes that the contracting officers April 13, 1990 utterance constitutes a final decision.

The court is guided in its analysis of this issue by the Federal Circuit's pronouncements in *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576–78 (Fed.Cir. 1992), and *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). These cases stand for the proposition that no particular form or magic words are required to create a claim under the CDA. Rather, the intent of the communication governs a court's analysis. If the intent is clear, then the failure to

explicitly state "this is a request for a final decision" is not fatal to a given plaintiff's case. *See id.*

Plaintiff previously benefitted from the Federal Circuit's ruling on "magic words." In finding that plaintiff's various submissions to the contracting officer constituted a claim, that court's telescopic examination of plaintiff's communications preserved plaintiff's case. At this juncture, however, plaintiff invokes the discredited "magic words" doctrine to insulate its partial recovery from the de novo review. Plaintiff cannot have it both ways. In the alternative, plaintiff points out that the unilateral modification does not bear the indicia of a final decision. The court concludes otherwise.

The confused chronology of communication in this case does not aid the court's analysis. On March 28, 1989, in the midst of back-and-forth communications between the parties, the contracting officer issued a preliminary decision denying plaintiff's claim. The letter stated, in part, that "it is my present intent to deny your claim; however, this is not my final decision. I will consider any additional information you may have or meet with you to discuss the claim.... If you do not respond within 30 calendar days of receipt of this letter, I will issue my final decision." Plaintiff's next communication was dated May 18, 1989 (inferentially more than a month after the contracting officer's letter), and merely revised the equitable adjustment. On April 13, 1990, a new contracting officer issued the unilateral modification to compensate plaintiff for additional work due to roof scale problems. A brief letter attached to the modification states that it serves to increase the contract consideration by the lump sum of $179,530.25 due to "costs and markup directly or indirectly attributable to the change ordered, for all delays related thereto, and for performance of the change within the time frame stated."

What clearly emerges, however, is that the April 13, 1990 unilateral modification was responsive to plaintiff's latest request for a final decision submitted on August 8, 1989. To be sure, the modification issued eight months after the request. But plaintiff does not ask the court to find the request deemed denied as of November 8, 1989, because plaintiff could not benefit from the contracting officer's unilateral modification. Rather, plaintiff first urges the court to ignore the contracting officer's liability determination as having been resolved through an unreviewable unilateral modification. Then plaintiff asks the court to deem plaintiff's request denied only as to the amount of the equitable adjustment.[4] The court cannot engage in such a piecemeal analysis. The modification is a unitary document upon which plaintiff sued in the Claims Court. It issued in response to what the Federal Circuit has instructed the court is a request for a final decision.

Plaintiff's alternative argument regarding the indicia required for a final decision carries more weight. Although the modification is not a model of a final decision, it is the functional equivalent because plaintiff sued based on the modification and was not prejudiced by its failure to contain the indicia of a final decision. This conclusion is fortified by several precedential cases regarding the nature of final decisions. In *Roscoe–Ajax Construction Co. v. United States*, 198 Ct.Cl. 133, 458 F.2d 55 (1972), the Court of Claims found that a letter affirming an earlier adverse decision by the contracting officer was not a final decision when the letter failed to notify the contractor that it was a final decision or list his appeal rights. The court held that the contractor could sue on the letter "despite the fact that it was substantially unfinalized." 198 Ct.Cl. at 149, 458 F.2d at 64.

In *Philadelphia Regent Builders, Inc. v. United States*, 225 Ct.Cl. 234, 634 F.2d 569 (1981), the Court of Claims analyzed the legal effect of a default termination notice that failed to "state that the Government reserved all its rights and remedies; ...

---

**4.** A proper application of the "deemed denied" option would negate the modification's existence altogether, because the request would be deemed denied as of 60 days after plaintiff's last submittal, or October 8, 1989. In this case the modification would be a nullity, and plaintiff would be forced to litigate entitlement to the entire equitable adjustment amount.

did not state that the notice constituted a decision pursuant to the disputes clause; ... [and] was not signed by the contracting officer." 225 Ct.Cl. at 239, 634 F.2d at 572. The court noted that plaintiff was not harmed by the defects insofar as it had completed performance, the notice contained essential information, and plaintiff was able to make a timely appeal. Accordingly, the court refused to nullify the notice; to do so "would be to grant plaintiff an entirely unwarranted windfall." *Id.* The court pointed to an earlier Court of Claims case in which the court had found a purported final decision defective and reversed the board on that basis. In that case, *Bostwick–Batterson Co. v. United States,* 151 Ct.Cl. 560, 565, 283 F.2d 956, 958–59 (1960), plaintiff failed to appeal as a result of the defective letter. The *Regent Builders* court stated that "[i]t is precisely the lack of any harm to plaintiff in this case which distinguishes it from the *Bostwick* case." 225 Ct.Cl. at 240, 634 F.2d at 573, *see also Pathman Constr. Co., v. United States,* 817 F.2d 1573, 1577–78 (Fed.Cir.1987) (where the court allowed the contractor to proceed with his suit because a defective final decision fails to trigger the running of the statute of limitations).

In *Building Services Unlimited, Inc.,* 87–3 B.C.A. ¶ 20,135, at 101,929, 1987 WL 41210 (1987), the contractor appealed on the basis of a letter containing a unilateral contract modification reducing the contract price and a narrative statement addressing issues raised in plaintiff's claim. Defendant argued that the modification did not constitute an appealable final decision because the contracting officer "did not have authority to issue a final contracting officer's decision and his letter did not purport to be such a decision [because it referred] specifically to the advice that a claim should be submitted to the contracting officer pursuant to the Disputes clause." *Id.* at 101,931. Plaintiff urged, in part, that the appeal was from a "*de facto* final decision." The Board agreed noting:

The formalities associated with the content of the contracting officer's decision are for the protection of the contractor. As a rule, non-adherence to these formalities does not deprive the contractor of the right to appeal therefrom....

....

This determination [*i.e.,* to issue a modification] was not made in a vacuum. The contractual action was a culmination of a dispute the parties had been involved in for almost a year and on which the appellant had already requested a contracting officer's final decision.

*Id.* at 101,932. Moreover, in *Solflores Construction,* 86–1 B.C.A. ¶ 18,617, at 93,-549, 1985 WL 17238 (1985), a unilateral contract modification issued granting an equitable adjustment instead of a formal final decision. The modification was held to be an appealable final decision. *See also P.X. Eng'g Co.,* 89–2 B.C.A. ¶ 21,859, at 109,952, 1989 WL 47503 (1989) ("Where an appeal is filed by a contractor from a final determination by the contracting officer which is not characterized as a final decision, we have taken jurisdiction....").

These decisions establish that the focus of a final decision analysis is the harm to plaintiff. Here, plaintiff was not injured by the dearth of indicia of finality in the contracting officer's modification letter. On the contrary, plaintiff sued on that basis within the statutory period. At trial the court will review the contracting officer's liability determination de novo.[5]

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's motion to exclude witnesses and limit issues is denied.

**IT IS SO ORDERED.**

---

**5.** As the court has previously stated to the parties, litigating the liability issue does not, in the court's view, allow the Government to obtain an affirmative recovery in the absence of a claim for that relief to the contracting officer. *See*

*Wilner Constr. Co. v. United States,* 26 Cl.Ct. 260, 277–80 (1992), *appeal docketed,* No. 92–5161 (Fed.Cir. Aug. 24, 1992); *see also Hobbs Constr. & Dev., Inc.,* No. 91–2 B.C.A. ¶ 24,014, at 120,245 n. 6, 1991 WL 90442 (1991) (noting defendant

---

asked for affirmative relief in absence of government claim).