**Susan S. FAHEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 04–1540C.

United States Court of Federal Claims.

May 31, 2006.

Jack L. Burtch, Aberdeen, WA, for plaintiff.

Michael Francis Kiely, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General and Director David M. Cohen, for defendant. Thomas J. Marshall, U.S. Postal Service, Washington, DC, of counsel.

## OPINION

FIRESTONE, Judge.

This matter comes before the court on a motion by the United States ("government") for summary judgment pursuant to Rule 56 of the Rules of the United States Court of

Federal Claims ("RCFC"). The plaintiff, Susan Fahey ("Fahey" or "plaintiff") alleges that the government breached two mail-delivery contracts that she had with the United States Postal Service ("Postal Service") by terminating these contracts for convenience.

Ms. Fahey claims that the terminations are improper because the contracts were terminated in retaliation for alleged "whistleblowing" by her with regard to the actions of certain Postal Service officials. Ms. Fahey also alleges that the government breached her contractual rights because the Postal Service failed to include in the termination letter a notice of Ms. Fahey's appeal rights under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (2000) ("CDA"). Ms. Fahey seeks a sum "in excess of $50,000" together with attorney fees.

The government argues that the Postal Service's termination for convenience of Ms. Fahey's contracts was proper and was not done in retaliation for Ms. Fahey's complaints to the Postal Service Inspector General and others. The government also argues that the Postal Service's failure to include in its termination letter a notice of Ms. Fahey's appeal rights under the CDA did not harm or damage Ms. Fahey and therefore does not give rise to a claim for breach of contract.

For the reasons set forth below, the court **GRANTS–IN–PART** and **DENIES–IN–PART** the government's motion for summary judgment.[1]

### BACKGROUND

The following facts, unless otherwise noted, are undisputed. In September 1995, the Postal Service and Ms. Fahey entered into a transportation services contract, which called for Ms. Fahey to deliver mail to homes and businesses in the area of Ocean Shores, Washington. In May 2000, the Postal Service renewed this contract with Ms. Fahey. As part of this renewal, the Postal Service split the delivery route into two routes and entered into two new highway transportation services contracts with Ms. Fahey, contract

nos. 98584 and 985A3. Each contract was for a term to commence on July 1, 2000, and expire on June 30, 2004. The annual rate for contract no. 98584 was $31,367.05; by the time it was terminated in October 2003, the annual rate had risen to $36,277.31, as a result of increases for higher fuel costs and schedule changes. The annual rate for contract no. 985A3 was $27,139.87; by the time it was terminated in October 2003, the annual rate had risen to $33,626.43, as the result of increases for higher fuel costs and schedule changes.

Both contracts contained the following "Termination for Convenience" clause:

> The contracting officer, on thirty days written notice, may terminate this contract or the right to perform under it, in whole or in part, when such action is in the best interest of the Postal Service. When a termination is effected under this clause, in the case of a highway transportation ... contract, the supplier shall be paid as liquidated damages the sum provided for in the *Changes (Transportation)* clause.... The liquidated damages permitted by this contract, if any, constitute the supplier's full remedy for a whole or partial termination under this clause.

Def.'s App. 37, 92. Both contracts also contained the following "Changes (Transportation)" clause, which, in relevant part, provided for liquidated damages in the event that a contract was terminated for convenience:

> In all cases, if this is a Highway Transportation Contract ... and it is terminated for convenience without fault on the part of the supplier, liquidated damages for the termination will be established as:
>
> (a) One-third of the annual rate (if during the first two years), or
>
> (b) One sixth of the annual rate (if during the third year), or
>
> (c) One-twelfth of the annual rate (if during the fourth year).

Def.'s App. 40, 96.

Undisputed documentation in the record indicates that Ms. Fahey (and her employ-

---

1. The court determined that oral argument was not necessary to resolve the legal issues present-    ed in the government's motion.

ees) had issues with how the Ocean Shores post office was being managed by John Hurlburt, the postmaster of the office. In a letter dated February 25, 2002 to Dale Zinser, a district manager in the Postal Service, Ms. Fahey, Colleen Reddick (an employee), and Tom Clemens (also an employee and Ms. Fahey's husband), complained about alleged harassment and discrimination within the Ocean Shores post office. In their letter, they stated that they had "over 70 documented things that go from harassment to discrimination." Def.'s App. 119. In a letter dated April 15, 2002, Mr. Zinser replied to Ms. Fahey, Ms. Reddick and Mr. Clemens, and requested that they send a copy of the "documented 70 incidents" so that the Postal Service could make a "legitimate inquiry" into their concerns. Def.'s App. 120.[2] Mr. Zinser's letter reflects that complaints had been filed with the Inspector General's office and that some preliminary investigation had been conducted.

Undisputed documentation in the record further indicates that on October 7, 2003, the contracting officer, David G. Lindlief, notified Ms. Fahey that Mr. Clemens was being denied access to the operations areas of the Ocean Shores Post Office due to "disruptive and threatening" actions taken by Mr. Clemens. Def.'s App. 122. On October 9, 2003, Ms. Fahey filed an appeal of the Postal Services' decision regarding Mr. Clemens and asked for a full investigation by the Inspector General. Def.'s App. 130–31. In her appeal, Ms. Fahey stated that the allegations regarding Mr. Clemens' behavior were unfounded and that she had been threatened by the Ocean Shore Postmaster, Mr. Hurlburt. She specifically stated that "the Ocean Shores Postmaster ... came after me and screamed at me with his fists doubled up. I feared the look he had in his eyes that day." Def.'s App. 130. Ms. Fahey sent copies of her appeal to Congressman Norm Dicks, the Postal Services' Inspector General's Seattle

office, and Senator Patty Murray. Def.'s App. 131.

Thereafter, on October 15, 2003, Ms. Fahey received a letter from the contracting officer which stated that "effective COB [close of business] October 17, 2003," Ms. Fahey would no longer be required to perform services under the contracts, but that the contract rate would continue to be paid through "COB November 14, 2003." The letter also stated that Ms. Fahey would be paid an "indemnity" [liquidated damages] of $3,023.11 under contract no. 98584 and $2,802.20 under contract no. 985A3. Def.'s App. 123. The termination letter did not include information about Ms. Fahey's right to appeal the termination.

Despite this failure to inform Ms. Fahey of her appeal rights, on October 23, 2003, Ms. Fahey appealed the termination for convenience decision. Def.'s App. 132. There is no evidence in the record as to whether the Postal Service responded to Ms. Fahey's appeal of the termination for convenience.

As for Ms. Fahey's appeal of the contracting officer's decision to deny Mr. Clemens access to the mail, the Postal Service denied her appeal. In a letter dated November 26, 2003 to Ms. Fahey, Russell Sykes, a surface transportation manager for the Postal Service, stated the "Postal Service has a zero tolerance policy against acts and threats of violence as well as inappropriate behavior in the workplace." Pl.'s Brief Ex. A4. Mr. Sykes further stated that Mr. Clemens had been arrested on June 10, 2001, for "Displaying a Weapon" and had received two years probation. Mr. Sykes stated that under Postal Service regulations, "persons ... on probation ... for commission of a felony are not eligible to provide services under contract."[3] Mr. Sykes concluded that the contracting officer's decision to deny Mr. Clemens access to the mail had not been "capricious, arbitrary, or in violation of postal regulations." Pl.'s Brief Ex. A4.

---

2. Ms. Fahey states that Ms. Reddick, Mr. Clemens and Ms. Fahey had sent 77 pages regarding their complaints to Mr. Zinser, as well as to the contracting officer and to Michael Hoover, the postmaster's immediate supervisor. There is no evidence of these 77 pages in the record before the court.

3. However, Ms. Fahey contends that Mr. Clemens was charged with a misdemeanor rather than a felony. Pl.'s Decl. ¶ 14.

On October 12, 2004, Ms. Fahey filed a complaint in this court alleging breach of contract and seeking "in excess of $50,000" for her loss of profits, as well as attorney fees.

The government filed a motion for summary judgment on October 19, 2005. In support of its motion for summary judgment the government submitted the affidavit of the contracting officer, Mr. Lindlief. Def.'s App. 133–35. In his affidavit, Mr. Lindlief states:

As a box delivery supplier for the Postal Service, Ms. Fahey had demonstrated an uncooperative attitude toward Postal Service management and employees and had promoted a disruptive and hostile relationship between herself and her contractor employee (Tom Clemens) on one side and Postal Service management and employees on the other side. Ms. Fahey showed poor judgment with contract personnel issues, as evidenced by the fact that she did not supervise or manage the behavior of Mr. Clemens or take any actions to discourage his hostile and threatening behavior toward Postal Service officials. Ms. Fahey also refused to participate with Postal Service officials in attempts to resolve conflicts. Postal Service District and Area personnel attempted alternate resolutions over a two-year period. But conflicts with Ms. Fahey continued to escalate, to disrupt Postal Service operations, and they appeared to be potentially violent in nature.

Def.'s App. 134, ¶ 4.

In response to the government's motion, the plaintiff filed her own affidavit, in which she states:

[Mr. Lindlief's] statement is totally false. There was never any behavior by Mr. Clemens that required any action to be taken to discourage any hostile or threatening behavior because that never happened. We completely participated in attempts to resolve conflicts. I sent Mr. Hoover all of my complaints, which numbered 77 pages. He ignored those complaints, and constantly said they were not sufficient.... There were never any complaints that I knew of, made to me about Mr. Clemens until they denied him access. Furthermore, I do not believe that Mr. Lindlief or Mr. Hoover ever received any letters regarding this. Pl.'s Decl. 4.

## DISCUSSION

### A. Standard of Review

Summary judgment is authorized when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." RCFC 56(c). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Unidynamics Corp. v. Automatic Prod. Int'l.*, 157 F.3d 1311, 1316 (Fed.Cir. 1998); *Adarbe v. United States*, 58 Fed.Cl. 707, 714 (2003). When considering a motion on summary judgment, the judge may not weigh the evidence or determine the truth of the evidence presented. 477 U.S. at 249, 106 S.Ct. 2505. Rather, the judge must determine whether the evidence presented is sufficient to require submission of the case to a fact-finder. *Id.* at 250–52, 106 S.Ct. 2505. Summary judgment will be granted when the record could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, summary judgment will not be granted if there is sufficient evidence to raise a question regarding the outcome of the case. In this connection, any doubt over factual issues must be resolved in favor of the party opposing summary judgment and the non-moving party is entitled to the benefit of all presumptions and inferences. *Id.* at 587–588, 106 S.Ct. 1348.

### B. There Are Genuine Issues of Material Fact Which Preclude Summary Judgment on Ms. Fahey's Claim of Bad Faith.

As noted above, Ms. Fahey contends that the Postal Service's terminations of her contracts were improper because the contracts were terminated in bad faith and in retaliation for alleged "whistleblowing" by her with regard to the actions of certain Postal Service officials. Ms. Fahey cannot

maintain a whistleblowing complaint in this court. *See Ho v. United States,* 49 Fed.Cl. 96, 106 (2001) ("[P]laintiff was a contractor, not an employee, and was not entitled to the rights ... under the Whistleblower Act.... Even if plaintiff were entitled to the protection of the Whistleblower Act, she would not be entitled to sue on whistleblower claims in this court."). Nonetheless, retaliatory motives may, if proven, indicate that a government official acted in bad faith. *Id.* at 107 n. 9 (citing *Labat–Anderson, Inc. v. United States,* 42 Fed.Cl. 806, 849–850 (1999)).

The government argues that summary judgment is appropriate because Ms. Fahey's assertions, even if true, are not sufficient to support a finding of bad faith. Relying upon the Federal Circuit's decision in *Am–Pro Protective Agency, Inc. v. United States,* 281 F.3d 1234, 1239 (Fed.Cir.2002), the government argues that Ms. Fahey has failed to introduce "clear and convincing proof" of bad faith. Thus, the government contends that the plaintiff has failed to meet the "weighty" burden she must meet to prove that the government acted in bad faith. *Krygoski Constr. Co. v. United States,* 94 F.3d 1537, 1541 (Fed.Cir.1996). The government also contends that the affidavit submitted by the contracting officer establishes the Postal Services' good faith in terminating Ms. Fahey's contracts for convenience. To determine the appropriateness of summary judgment the court turns to the evidence submitted.

The record includes both Ms. Fahey's declaration and copies of several contemporaneous documents which she claims support her contentions. The declaration and documents allege that Mr. Hurlburt, the postmaster, harassed contract carriers, such as herself. For example, she states that Mr. Hurlburt would "continuously yell and scream and intimidate the women contract carriers, including me, and was physically threatening to me and other contract carriers." Pl.'s Decl. 2. The record also reveals that these allegations were brought to the Inspector General's attention and to the contracting officer's attention on several occasions. For example, the record includes the plaintiff's February 25, 2002 letter to Mr. Zinser in which she stated, "[W]e have over 70 documented things that

go from harassment to discrimination." Def.'s App. 119.

Ms. Fahey further alleges that when she complained about Mr. Hurlburt's actions to Kris Stoneback, an assistant to the contracting officer, Ms. Stoneback told her that "Mr. Hurlburt could do anything he wanted regardless of my contractual rights." Pl.'s Decl. 1. Ms. Fahey further alleges that shortly after she complained about Mr. Hurlburt to the Postal Service's Inspector General's office, Mr. Hurlburt "grilled me about my complaints and threatened to sue me. He also stated at that time that he owned me and my automobile until 3:30 p.m.... He indicated very clearly that my contract was not binding on him and I only had the rights he was willing to give me." Pl.'s Decl. 2–3. According to Ms. Fahey, Mr. Hulburt is related to one of the Inspector General's employees. Pl's Decl. 5. Ms. Fahey alleges that it was after this conversation with Mr. Hurlburt that the contracting officer denied Mr. Clemens the right of access to the mail. Pl.'s Decl. 3.

The record reveals that when Ms. Fahey appealed the denial of access decision, she again complained of Mr. Hurlburt's allegedly threatening behavior and that she sent copies of her appeal to the Inspector General and to her Congressman and Senator. Def.'s App. 130–31. Ms. Fahey alleges that the termination for convenience was done in retaliation of her complaints against Mr. Hurlburt. She further alleges that the retaliation did not stop with the termination for convenience. Ms. Fahey alleges that when she tried to contact the contracting officer's office to find out how to appeal the termination decision, she was informed that "I did not have a right to appeal, that it was a done deal, and there was nothing that could be done." Pl.'s Decl. 3.

Finally, Ms. Fahey charges that the contracting officer's declaration is not supported and she disputes his contentions regarding her behavior and the Postal Service's efforts to work with her. She states, "[Mr. Lindlief's] statement is totally false. There was never any behavior by Mr. Clemens that required any action to be taken to discourage any hostile or threatening behavior because

that never happened. We completely participated in attempts to resolve conflicts." Pl.'s Decl. 4. Based on these allegations and on others in her affidavit, Ms. Fahey concludes that summary judgment is inappropriate because the issue of whether the Postal Service acted in bad faith is a question of fact that is disputed in this case.

The government argues that Ms. Fahey's allegations do not overcome the presumption that government officials act in good faith. The government argues that the contracting officer's actions in terminating the Postal Service contracts with Ms. Fahey were justified because of the contentious relationship between Ms. Fahey and the Ocean Shores postmaster. The government contends that the Postal Service is justified in terminating a contract when the contractor and postmaster are in conflict. In support of this proposition, the government relies on a number of cases where the Postal Service Board of Contract Appeals ("PSBCA") held that, where there had been a contentious work environment between the contractor and the postmaster, the contracting officer's termination of the contract on 30 days' notice was not in bad faith. *See Appeal of AJ Custodial Service,* PSBCA No. 5220, 05–2 BCA ¶ 33087, 2005 WL 2414546 (Sept. 30, 2005) ("It is apparent from the record that there was friction between Appellant and the postmaster. . . . Resolving such a contentious work environment is another justification for terminating the contract on 30 days' notice. . . . Appellant has not shown by clear and convincing evidence that the postmaster had some specific intent to harm it or was motivated alone by malice in terminating the contract, which is what Appellant must show to demonstrate bad faith. . . ."). *See also Appeal of D & C Bldg. Maint., Inc.,* PSBCA No. 4459, 01–1 BCA ¶ 31301, 2001 WL 185507 (Feb. 13, 2001); *Appeal of Swearingen Servs., Inc.,* PSBCA No. 3718, 96–2 BCA ¶ 28398, 1996 WL 335787 (June 20, 1996).

Finally, the government relies on *Rice Systems, Inc. v. United States,* 62 Fed.Cl. 608, 630 (2004), for the proposition that Ms. Fahey cannot defeat summary judgment based on "bald allegations" of bad faith. In *Rice,* the court concluded that the plaintiff did not defeat summary judgment where there was no contemporaneous evidence to support the "bald assertions and speculation of wrongful conduct" in the plaintiff's declaration, which had been prepared after litigation had begun. *Id.*

While the court agrees with the government that Ms. Fahey has a "weighty burden" to prove bad faith, the court cannot say as a matter of law, on this record, that Ms. Fahey has failed to allege sufficient facts to support a claim for breach of contract based on bad faith. It is well-settled that the government does not have absolute and unreviewable discretion to terminate a contract for convenience. *See Krygoski,* 94 F.3d at 1541 (internal citations omitted) ("[T]he Government's authority to invoke a termination for convenience has, nonetheless, retained limits. A contracting officer may not terminate for convenience in bad faith, for example, simply to acquire a better bargain from another source. When tainted by bad faith or an abuse of contracting discretion, a termination for convenience causes a contract breach."). Moreover, while government officials are presumed to act in good faith, evidence of retaliation may support a finding of bad faith. *Labat–Anderson,* 42 Fed.Cl. at 849–50.

Here, the court finds that the issue of retaliation is an open issue. The plaintiff in this case has presented a record documenting in some detail her complaints to the Postal Service Inspector General and others regarding harassment by the local postmaster. Thus, the court cannot agree with the government that Ms. Fahey has made only "bald allegations" of bad faith. Unlike the plaintiff's declaration in *Rice,* 62 Fed.Cl. at 630, here there is contemporaneous evidence of Ms. Fahey's complaints about the postmaster's treatment of herself and her employees, including her February 22, 2002, letter to Mr. Zinser, Def.'s App. 119, and her October 9, 2003, appeal of the decision to deny Mr. Clemens access to the mail, Def.'s App. 130. In addition, to the extent the government relies upon the contracting officer's declaration to support its version of the facts, it is plain that those facts are disputed by the plaintiff in her affidavit.

In such circumstances, a trial is needed to determine the merits of the plaintiff's claim and for the government to present its side of these facts. At trial, Ms. Fahey will need to meet a very high standard of proof to overcome the presumption that government officials act in good faith. Thus, if the court has reason to question the credibility of the plaintiff's witnesses or if the court finds that the government's version of the facts is supported, the government will prevail. As the government has argued, and the PSBCA has held, where there is a contentious work relationship between a contractor and the postmaster, the Postal Service may terminate a contract for convenience. On the other hand, if clear and convincing evidence demonstrates that the termination of her contracts was motived by malice and was in retaliation for Ms. Fahey's complaints of alleged harassment and wrongdoing by the postmaster—and that the government was not simply endeavoring to end a contentious relationship—the plaintiff will prevail. For all of these reasons, the government's motion for summary judgment on Ms. Fahey's claim of breach of contract based on bad faith is **DENIED.**

C. **The Government is Entitled to Summary Judgment on Ms. Fahey's Claim of Breach of Contract Based on the Postal Service's Failure to Include in the Termination Letter an Explanation of Ms. Fahey's Appeal Rights.**

The parties do not dispute the fact that the Postal Service's termination letter, dated October 15, 2003, failed to notify Ms. Fahey about her appeal rights provided under the CDA. Ms. Fahey contends that the Postal Service breached its contracts with her by failing to include in the termination letter a notice of her appeal rights.

The government argues that Ms. Fahey was not harmed by the omission because she timely filed her appeal and is now being heard. The government relies on *Transamerica Insurance Corp. v. United States,* 28 Fed.Cl. 418, 424 (1993), and *Florida Department of Insurance v. United States,* 33 Fed.Cl. 188, 193 (1995), for the proposition that the focus of an analysis of the legal

effect of a notice depends on whether a plaintiff has suffered harm. Furthermore, relying on *Pathman Construction Co. v. United States,* 817 F.2d 1573, 1578 (Fed.Cir.1987), the government argues that even if Ms. Fahey had been harmed by the omission, the resulting remedy would have been that the running of the statute of limitations would not have been triggered by the defective termination letter.

The court agrees with the government that the Postal Service's failure to inform Ms. Fahey of her appeal rights does not constitute a breach of contract. First, as the government argues, Ms. Fahey has not suffered harm from this omission. Despite the Postal Service's failure to inform Ms. Fahey of her appeal rights, she filed this action on October 12, 2004, which is within the twelve-month period prescribed by the CDA, 41 U.S.C. § 609(a)(3). Second, this court has previously rejected the argument that a defective termination notice constitutes a breach of contract. *Kisco Co. v. United States,* 221 Ct.Cl. 806, 610 F.2d 742, 755 (1979) (rejecting a breach of contract claim for an invalid default termination notice, and stating that the exclusive remedy was provided for in the termination for convenience clause of the contract).

The Postal Service's failure to inform Ms. Fahey of her appeal rights may be relevant to the issue of whether the Postal Service acted in bad faith; however, it does not constitute a separate claim for a breach of contract. Therefore, the government's motion for summary judgment for dismissal of Ms. Fahey's claim for a breach of a contract based on the Postal Service's failure to inform her of her appeal rights, is **GRANTED.**

### CONCLUSION

For all of the foregoing reasons, the government's motion for summary judgment is **GRANTED–IN–PART** and **DENIED–IN–PART.** The government's motion for summary judgment regarding Ms. Fahey's breach of contract claim based on the Postal Service's failure to inform her of her appeal rights is **GRANTED.** The government's motion for summary judgment regarding Ms. Fahey's remaining breach of contract claim

based on bad faith is **DENIED.** The court shall contact the parties within ten days to discuss a schedule for resolving the plaintiff's remaining claim.

**IT IS SO ORDERED.**