In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-1237

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

T&W EDMIER CORP.,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 3079—**Harry D. Leinenweber**, *Judge.*

---

ARGUED SEPTEMBER 8, 2006—DECIDED OCTOBER 10, 2006

---

Before CUDAHY, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* After T&W Edmier Corp. completed its work on a reservoir in Deerfield, Illinois, it asked the Army Corps of Engineers for $32 million in addition to the agreed price of $11 million. It asserted that the extra $32 million was justified by the expense of removing hazardous materials. When the parties could not reach an agreement, Edmier initiated a formal proceeding under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-13. A contracting officer, who took evidence and made an initial decision, see 41 U.S.C. §605(a), concluded that Edmier was entitled to about $3.5 million on top of

what it had received (the $11 million plus some supplemental payments to which the Corps agreed). The Corps paid in full. Edmier was not satisfied, however, and asked the Armed Services Board of Contract Appeals for more. After plenary consideration, the Board decided that Edmier is entitled to only $1.9 million. 2003 ASBCA LEXIS 122 (Dec. 11, 2003). The United States asked Edmier to return the excess $1.6 million and, when it refused, filed this collection proceeding.

Edmier's initial position in the district court was that the Board had awarded it $1.9 million in addition to the contracting officer's award of $3.5 million, so that the United States was the debtor rather than the creditor. Even a quick review of the opinion shows, however, that the Board reckoned from scratch, not from the contract price plus agreed supplements plus the contracting officer's addition. So Edmier moved to a fallback: that the suit should be dismissed for lack of subject-matter jurisdiction. The United States had invoked 28 U.S.C. §1345, which reads: "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." According to Edmier, the Contract Disputes Act "otherwise provides" by requiring the United States, as well as any private contractor, to submit disputes to a contracting officer and the appropriate appellate board. The United States was the respondent rather than the petitioner in the proceedings already held and therefore, Edmier maintained, must start over with its own petition to a contracting officer. The district court disagreed and entered judgment in the United States' favor for $1.7 million (the overpayment plus interest). 2005 U.S. Dist. LEXIS 28831 (N.D. Ill. Nov. 16, 2005).

What Edmier's argument has to do with subject-matter jurisdiction is a mystery. The Contract Disputes Act

scarcely mentions the jurisdiction of the Article III courts. It permits (and sometimes requires) contractors to file their suits in the Court of Federal Claims, see 41 U.S.C. §609(a), but does not say where or when the United States may sue. It therefore does not "otherwise provide" anything about jurisdiction within the meaning of §1345. Cf. *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003).

Edmier maintains that the United States failed to exhaust administrative remedies created by the Contract Disputes Act. Exhaustion may be a condition to suit (or to success in court) but is rarely a limit on subject-matter jurisdiction. See, e.g., *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 766-67 (1975); *Abdelqadar v. Gonzales*, 413 F.3d 668, 670-71 (7th Cir. 2005). As the Supreme Court has explained frequently, there is a difference between case-processing rules and limits on jurisdiction. See *Eberhart v. United States*, 126 S. Ct. 403 (2005); *Scarborough v. Principi*, 541 U.S. 401 (2004); *Kontrick v. Ryan*, 540 U.S. 443 (2004). To say that Congress has authorized the federal courts to decide a class of disputes is to say that subject-matter jurisdiction is present. Congress has authorized the judiciary to entertain debt-recovery suits by the United States. See 28 U.S.C. §1331, §1345. A plaintiff's failure to take required pre-litigation steps may lead to defeat in court, but it is not a defect in the tribunal's adjudicatory competence. (To put this otherwise, failure to exhaust administrative remedies may be waived or forfeited, while an absence of subject-matter jurisdiction may not.)

Let us consider, then, the right question: Does the Contract Disputes Act require the United States to file its own administrative claim in order to recover an overpayment that ensues from a decision by the Board that the United States owes less than the contracting officer awarded? No, it does not. The Act does not require the United States to file an administrative claim in *any* situa-

tion, as far as we can make out. What is required when the government seeks a payment from the contractor is not an independent claim, but a decision. Here is the pertinent text, the first two sentences of §605(a): "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." So the contractor must submit a claim, but when the government seeks a recovery it is enough that the issue "shall be the subject of a decision by the contracting officer."

The difference in language is not hard to appreciate. The contractor files a claim, which leads to a "decision"; if that "decision" is in the government's favor, no further claim is required. Why would one be? The goal of an exhaustion requirement is to ensure that a dispute receives full administrative consideration. The agency finds essential facts and may facilitate compromise, avoiding the need for litigation. Once the administrative decision has been made, and the parties ask a court for review, it matters not which party initiated the administrative proceeding. It *could* matter if the statute made the administrative appeal a ratchet: the Board could increase, but never reduce, the contracting officer's award. Then the only way to determine whether the contracting officer's decision was too high (and, if so, how much too high) would be to initiate a separate proceeding. That would entail wasted motion, however, compared with an approach that allows the administrative appeal to adjust the contracting officer's award in either direction. Because the Contract Disputes Act allows the appellate board to make an independent decision and decrease as well as increase the award, there is no reason to rerun the process before the United States may collect any net balance in its favor.

The sort of dispute that these parties are having arose only because the United States paid the contracting officer's award without waiting for the outcome of Edmier's administrative appeal. If we were to accept Edmier's position in this litigation, one logical response by the Executive Branch would be to refuse to pay until the administrative process had run its course—for then there would never be a need to file another administrative proceeding in order to recoup the difference. (A new administrative claim would mean delay in collection, and from the government's perspective a year's delay in trying to collect from many small and thinly capitalized contractors is the same thing as allowing the money to evaporate. The contractor will be judgment proof.) Inducing the government to defer payment would not assist contractors, however; many a small firm has liquidity problems and cannot wait another year or two to be paid. The approach exemplified here—pay at once whatever the contracting officer awards, and settle up promptly after the Board makes a final decision—is favorable to contractors in the main. The Contract Disputes Act does not compel the United States to act otherwise.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*