**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2307
_____

ANSELMA CROSSING, L.P.,
                                        Appellant

v.

UNITED STATES POSTAL SERVICE
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA
(D.C. Civil No. 2-09-cv-05643)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
January 12, 2011
_____

Before: SCIRICA, BARRY and VANASKIE, <u>Circuit Judges</u>

(Opinion Filed: February 25, 2011)
_____

Alfred A. Gollatz, Esq.
MacElree Harvey
17 West Miner Street
P.O. Box 660
West Chester, PA 19381-0000

<u>Counsel for Appellant</u>

Paul W. Kaufman, Esq.
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-0000
-AND-
Michael J. Elston, Esq.
United States Postal Service
Room 6505
475 L'Enfant Plaza, S.W.
Washington, DC 20260

Counsel for Appellee

_____

OPINION OF THE COURT
_____

BARRY, Circuit Judge

This appeal requires us to determine whether the Contract Disputes Act of 1978 ("CDA"), Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3816-26 (2011) (to be codified at 41 U.S.C. §§ 7101-7109),[1] bars breach of contract and "essentially contractual" claims against the United States Postal Service ("USPS") in the district courts of the United States. We find that it does, and will affirm.

---

[1] On January 4, 2011, subsequent to the completion of briefing in this appeal, Congress altered the provisions of the CDA in ways immaterial to our analysis. The session laws reflecting the alterations also note that the CDA will be recodified. *See* Act of Jan. 4, 2011, Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3816-26. Accordingly, the provisions of the CDA formerly listed in the U.S. Code at 41 U.S.C. §§ 601-613 will be listed at 41 U.S.C. §§ 7101-7109. We cite to the session laws and note the expected codification section of the U.S. Code because recodification was not finalized at the time of this Opinion.

## I.

The factual background of this case is not complicated and is largely undisputed. Anselma Crossing, L.P. ("Anselma"), is the owner and developer of a piece of real estate in Chester Springs, Pennsylvania. In November 2009, Anselma filed a complaint against the USPS—amended in February 2010—alleging that Anselma and the USPS agreed in March 2007 that the USPS would lease a post office building from Anselma which Anselma would construct at its site in or around 2010. The agreement was not reduced to writing. Anselma alleged that the USPS made representations to the local government that Anselma had been chosen as a new USPS site. In reliance on the agreement and the USPS's representations, Anselma claims to have spent substantial sums on engineering, professional, and environmental services directly related to constructing a building that would meet USPS requirements. At some point in late 2008, the USPS made an internal decision to rescind all formerly approved new projects, a decision which affected 400 projects, including the Anselma project. Anselma was informed of the USPS's decision when the USPS replied to inquiries from Anselma's Congressman in March 2009. Anselma sought $150,000 in damages under theories of breach of contract and promissory estoppel.

The USPS moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The District Court heard oral argument and granted the USPS's motion, reaffirming its decision in *Spodek v. United States*, 26 F. Supp. 2d 750, 753 (E.D. Pa. 1998), where, in a case similar to the one before us, it found that the CDA barred jurisdiction in the federal district courts over breach of contract claims against the USPS. This timely appeal followed.[2]

On an appeal from a dismissal for lack of jurisdiction,

---

[2] We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

3

we exercise plenary review over legal conclusions and review a district court's findings of fact for clear error. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008).

## II.

The question of whether a district court has jurisdiction to entertain a breach of contract claim against the USPS is simply stated but not so simply resolved. Indeed, to answer the question we must examine the interplay between the CDA and various provisions of the Postal Reorganization Act ("PRA"), 39 U.S.C. §§ 401, 409, 410, as well as the issue of sovereign immunity.

It is well settled that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The United States must consent to be sued, and "the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The USPS is an "independent establishment" of the executive branch and, thus, is part of the government and cannot be sued absent a waiver. *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 744 (2004) (citing 39 U.S.C. § 201). The government has waived the immunity of the USPS through the PRA, which gives the USPS the power to "sue and be sued in its official name." 39 U.S.C § 401(1); *see also Flamingo Indus.*, 540 U.S. at 741. Relevant to this appeal, § 409(a) of the PRA states that "[e]xcept as otherwise provided in this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." 39 U.S.C. § 409(a).

The question before us, then, is not whether an aggrieved party may bring a claim against the USPS—it can—but where the claim may be brought. With respect to claims sounding in contract, the CDA "established a comprehensive framework for resolving contract disputes between executive branch agencies and government contractors." *Menominee Indian Tribe v. United States*, 614 F.3d 519, 521 (D.C. Cir. 2010). The CDA applies to any

4

express or implied contract entered into by an executive agency for the procurement of property, services, construction, repair, or the disposal of personal property. Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3817 (2011) (to be codified at 41 U.S.C. § 7102(a)). Under the CDA, a claim for breach of contract must be presented to a designated contracting officer. A party may appeal a decision by the contracting officer to the relevant board of contract appeals or to the United States Court of Federal Claims. *Id.* at § 3, 124 Stat. at 3817-22 (to be codified at 41 U.S.C. §§ 7103-7105).[3] "The CDA is intended to keep government contract disputes out of district courts; it limits review of the merits of government contract disputes to certain forums, both to limit the waiver of sovereign immunity and to submit government contract issues to forums that have specialized knowledge and experience." *United States v. Kasler Elec. Co.,* 123 F.3d 341, 346 (6th Cir. 1997); *see also* S. Rep. No. 95-1118, at 1 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5235 (noting that the purpose of the CDA is to "help to induce resolution of more contract disputes by negotiation prior to litigation; equalize the bargaining power of the parties when a dispute exists; provide alternate forums suitable to handle different types of disputes; and insure fair and equitable treatment to contractors and Government agencies").

## A.

Anselma argues that the plain language of § 401(1) of the PRA allows the USPS to "sue and be sued," that federal district courts have original but not exclusive jurisdiction to hear claims against the USPS under § 409(a) of the PRA, and that the CDA does not bar breach of contract claims in the federal district courts. Anselma relies on our decision in *Licata v. U.S. Postal Service*, 33 F.3d 259 (3d Cir. 1994), which raised but left open the precise question in this appeal.

---

[3] The CDA "established" a board of contract appeals within the USPS called the Postal Service Board of Contract Appeals. Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3822 (2011) (to be codified at 41 U.S.C. § 7105(d)(1)).

In *Licata*, the plaintiff sued the USPS for breach of contract. Two issues were raised: (1) whether § 409(a) provided an independent basis for subject matter jurisdiction; and (2) whether the Tucker Act deprived the district courts of jurisdiction over the USPS. Only the first issue is relevant here. As to that issue, we disagreed with the line of cases holding that subject matter jurisdiction did not exist under § 409(a) without a separate valid cause of action. *Id.* at 262 ("[W]e believe that the Postal Service's argument . . . that subject matter jurisdiction is absent without a cause of action is seriously flawed because whether or not a cause of action exists goes to the merits, not to the question of subject-matter jurisdiction." (citation and internal quotation marks omitted)). Instead, we held that § 409(a) had a plain meaning that gave a "clear and unequivocal grant of jurisdiction to the district courts." *Id.* at 261 (citation and internal quotation marks omitted). Accordingly, we held that "absent some other statutory bar, section 409(a) grants district courts subject matter jurisdiction over actions to which the Postal Service is a party." *Id.* at 263. Importantly, we also clarified that § 401(1), the PRA's "sue and be sued" clause, addresses the USPS's waiver of sovereign immunity, while § 409(a) addresses subject matter jurisdiction, and that it was error to conflate the two provisions when considering whether the district court had jurisdiction over cases involving the USPS. *Id.* at 262. *Sua sponte*, we raised, but left open, the possibility that the CDA was a statutory bar to § 409(a)'s grant of jurisdiction, *id.* at 254 n.6, the question we answer today.[4]

The USPS urges us to follow *U.S. Postal Service v. Flamingo Industries (USA), Ltd.*, 540 U.S. 736 (2004),

---

[4] Following *Licata*, district courts within the Third Circuit have not been consistent as to whether the CDA bars federal district court jurisdiction over contract claims against the USPS. *Compare Eagle Fence Co., v. V.S. Electric, Inc.*, 324 F. Supp. 2d 621, 626 (E.D. Pa. 2004) (dismissing claim for lack of subject matter jurisdiction), and *Spodek*, 26 F. Supp. 2d at 755 (same), *with Pike v. U.S. Postal Serv.*, 886 F. Supp. 487, 490-91 (E.D. Pa. 1995) (finding that district court had jurisdiction).

6

decided ten years after *Licata*. In *Flamingo Industries*, the Court addressed the question of how to determine when the "sue and be sued" clause of 39 U.S.C. § 401(1) permits suits against the USPS. Plaintiffs there sued the USPS under federal antitrust law. The Court described a two-step process for determining whether the USPS could be subject to substantive liability. First, "[w]e ask . . . whether there is a waiver of sovereign immunity for actions against the Postal Service. If there is, we ask the second question, which is whether the substantive prohibitions of the Sherman Act apply to an independent establishment of the Executive Branch of the United States." *Id.* at 743. In explaining why the second step was "important," the Court stated that "[a]n absence of immunity does not result in liability if the substantive law in question is not intended to reach the federal entity. So we proceed to [the] second step to determine if the substantive antitrust liability defined by the statute extends to the Postal Service." *Id.* at 744. Applying its two-step process, the Court determined that under the first step, § 401(1) waived immunity. Under the second step, it determined that because neither the government nor the USPS was a "person" under the Sherman Act, the USPS "is not controlled by the antitrust laws." *Id.* at 748.[5]

*Flamingo Industries* is not, however, directly applicable to the question before us, *i.e.* whether the CDA is a statutory bar to § 409(a)'s grant of jurisdiction to the federal district courts. *Flamingo Industries* only discussed the waiver of sovereign immunity under § 401(1), which addresses *whether* the USPS can be sued; it did not discuss § 409(a), which addresses *where* the USPS can be sued once sovereign immunity has been waived.[6] *See*, *e.g.*, *Cont'l Cablevision of*

---

[5] *Flamingo Industries* did not establish new law; the two-part test had been established in *FDIC v. Meyer*, 510 U.S. 471, 484 (1994).

[6] Even if we applied *Flamingo Industries*, we would conclude that Anselma satisfies the two-part test. Under the first part, there is no question that the "sue and be sued" clause of § 401(1) waives sovereign immunity. Under the second part, we look to the substantive claim to see whether

7

*St. Paul, Inc. v. U.S. Postal Serv.*, 945 F.2d 1434, 1437 (8th Cir. 1991) (explaining that § 409(a) is a grant of jurisdiction, while § 401(1) is a waiver of sovereign immunity). *Licata* set forth the law of this circuit regarding § 401(1)'s relevance—or, more appropriately, irrelevance—to a § 409(a) analysis of subject matter jurisdiction, and the subsequently decided *Flamingo Industries* does not require a reevaluation of *Licata*.

## B.

At issue, then, is the question that *Licata* left open—whether the CDA is a statutory bar to the jurisdiction granted to the federal district courts in § 409(a). Although we find, for the reasons stated below, that it is, we must first explain why the CDA continues to apply to the USPS following the 2006 amendments to the statute.

### i.

Under the heading, "Applicability of [C]hapter," the CDA states

> (a) EXECUTIVE AGENCY CONTRACTS.—Unless otherwise specifically provided in this chapter, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described

---

Congress intended it to apply to the government agency. In *Flamingo Industries*, the Court held that the USPS was not a "person" and therefore not controlled by the antitrust laws. *Flamingo Indus.*, 540 U.S. at 744-48. Here, however, Anselma alleges breach of contract, and the CDA allows contract claims to proceed against the government and the USPS—it simply specifies where the claim must proceed. *See*, *e.g.*, *Pinckney v. United States*, 88 Fed. Cl. 490, 505 (Fed. Cl. 2009) ("The United States Court of Federal Claims . . . has jurisdiction to 'render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States.'" (quoting 28 U.S.C. § 1491(a)(1))).

8

in sections 1346 and 1491 of title 28) *made by an executive agency* for—

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair, or maintenance of real property; or

(4) the disposal of personal property.

Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3817 (2011) (to be codified at 41 U.S.C. § 7102(a)) (emphasis added).

Until 2006, and since the Act's enactment in 1978, 41 U.S.C. § 601, the former definitional section of the CDA, defined the term "executive agency" as

an executive department as defined in section 101 of Title 5, an independent establishment as defined by section 104 of Title 5 (except that it shall not include the Government Accountability Office), a military department as defined by section 102 of Title 5, and a wholly owned Government corporation as defined by section 9101(3) of Title 31, *the United States Postal Service*, and the Postal Rate Commission

41 U.S.C. § 601(2) (2004), *amended by* 41 U.S.C. § 601(2) (2006) (emphasis added). In 2006, however, Congress amended the CDA to strike out the phrase, "the United States Postal Service, and the Postal Rate Commission." *See* 41 U.S.C. § 601(2) (2006), *amended by* Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3817 (2011) (to be codified at 41 U.S.C. § 7101(8)). The recently recodified statute retains the 2006 amendment, defining an "executive agency" as

9

(A) an executive department as defined in section 101 of title 5;

(B) a military department as defined in section 102 of title 5;

(C) an independent establishment as defined in section 104 of title 5, except that the term does not include the Government Accountability Office; and

(D) a wholly owned Government corporation as defined in section 9101(3) of title 31.

Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3817 (2011) (to be codified at 41 U.S.C. § 7101(8)).

None of the definitions of "executive agency" includes the USPS, a point the USPS concedes. The USPS argues, however, that the CDA continues to apply to the USPS because (1) the 2006 amendments to the CDA reauthorized the Postal Service Board of Contract Appeals, and thus the statute continued to treat the USPS as an executive agency (and the 2011 recodification continues that reauthorization);[7]

---

[7]    Added as part of the 2006 amendments, § 607(c)

> established an agency board of contract appeals to be known as the "Postal Service Board of Contract Appeals". Such board shall have jurisdiction to decide any appeal from a decision of a contracting officer of the United States Postal Service or the Postal Regulatory Commission relative to a contract made by either agency. . . . This chapter shall apply to contract disputes before the Postal Service Board of Contract Appeals in the same manner as they apply to contract disputes before the Civilian Board.

and (2) there is no evidence in the legislative history that Congress intended to remove the USPS from the CDA.[8]

---

41 U.S.C. § 607(c), *amended by* Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3822 (2011) (to be codified at 41 U.S.C. § 7105(d)-(e)).

[8] The legislative history of the 2006 amendments is silent on Congress' rationale for striking the USPS from § 601(2). The 2006 amendments were included in a bill titled "National Defense Authorization Act for Fiscal Year 2006." The report on the Act from the House of Representatives states, in relevant part, only that the Act

> would provide conforming amendments to the Contract Disputes Act of 1978 (Disputes Act) (41 U.S.C. 601) needed by the establishment of the Defense Board of Contract Appeals and the Civilian Board of Contract Appeals (Civilian Board) regarding contract disputes. *This section also would establish the Postal Service Board of Contract Appeals to decide appeals under the Disputes Act for contracts awarded by the United States Postal Service* or the Postal Rate Commission and provide for the selection and appointment of Board judges by the Postmaster General in the same manner as judges of the Civilian Board.

H.R. Rep. No. 109-89, at 397 (2005) (emphasis added).

This section explains the "establish[ment]" of the Postal Service Board of Contract Appeals, but nowhere is there an explanation of why § 601(2) removed all reference to the USPS. Congress' silence, in the presence of contrary additions to the 2006 statute, weighs against a finding that Congress intended a wholesale removal of the USPS from the CDA. *See NLRB v. Plasterers' Local Union No. 79, Operative Plasterers' and Cement Masons' Int'l Ass'n*, 404 U.S. 116, 129-30 (1971) (noting that the Supreme Court "has frequently cautioned that '(i)t is at best treacherous to find in

11

Unfortunately for the USPS, by removing it from the definition of "executive agency" while at the same time adding provisions regarding the jurisdiction of the Postal Service Board of Contract Appeals, Congress created an ambiguity about whether the Act applies to it at all.

We need not resolve this ambiguity, however, because there is another, unambiguous reason for why the CDA applies to the USPS. That reason is this: the PRA permits the USPS to adopt the CDA via its own internal regulations, *see* 39 U.S.C. §410(a), and it has done so in 39 C.F.R. § 601.109.

Section 410(a) states that

> Except as provided by subsection (b) of this section, and except as otherwise provided in this title *or insofar as such laws remain in force as rules or regulations of the Postal Service*, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service.

39 U.S.C. § 410(a) (emphasis added). Stated more succinctly, the CDA does not apply to the USPS unless the CDA "remain[s] in force as rules or regulations of the Postal Service." *Id.* The USPS argues that Congress, by virtue of § 410(a), allowed it to decide whether or not to remain bound by the CDA, and that it has decided to do so by administrative regulation in 39 C.F.R. § 601.109. *See* 39 C.F.R. § 601.109 ("This section implements the Contract Disputes Act of 1978,

---

Congressional silence alone the adoption of a controlling rule of law.'" (quoting *Girouard v. United States*, 328 U.S. 61, 69 (1946))).

12

as amended (41 U.S.C. 601-613)."). Although we agree with the USPS that "[t]o argue that a federal agency, by regulation, can effectively limit the jurisdiction of federal district courts is counterintuitive," *see* Appellee's Letter Br. of December 20, 2010 at 7 n.5, a literal reading of the statute supports the USPS's right, via authorization by Congress, to adopt the CDA in whole as part its own administrative regulations. Accordingly, the CDA continues to apply to the USPS, regardless of any ambiguity within the 2006 amendments and 2011 recodification.

ii.

We turn, finally, to the main issue in this case: whether the CDA overrides the grant of jurisdiction to the federal district courts in § 409(a). The USPS argues that § 409(a) "is a general grant of jurisdiction that is necessarily limited by more specific grants of exclusive jurisdiction to other courts or administrative bodies," and that the CDA is such a specific statute. Appellee's Br. at 22. It cites to opinions of the Supreme Court and this Court stating that precisely written statutes prevail over more general statutes. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976) ("In a variety of contexts the Court has held that a precisely drawn, detailed statute pre-empts more general remedies."); *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling."); *In re Phila. Newspapers, LLC*, 599 F.3d 298, 328 (3d Cir. 2010) ("Statutory Construction 101 contains the canon that a specific provision will prevail over a general one."). "The CDA," the USPS concludes, "is a specific statute that applies to procurement contracts and vests exclusive jurisdiction over claims in the Court of Federal Claims or the agency board of contract appeals." In contrast, "[t]he jurisdictional grant in 39 U.S.C. § 409 applies to a wide, undifferentiated mass of claims and is therefore plainly more general. Thus, the CDA controls as to claims within its scope." Appellee's Br. at 22-23.

The clear majority of courts of appeals that have

13

addressed whether the CDA bars federal district court jurisdiction over breach of contract claims against the USPS have found that it does. In *Goodin v. U.S. Postal Inspection Serv.*, 444 F.3d 998 (8th Cir. 2006), for example, the plaintiff brought breach of contract claims and the district court dismissed based on lack of subject matter jurisdiction under the CDA. On appeal, plaintiff argued that the district court had jurisdiction based on the sue and be sued clause of § 401(1). *Id.* at 1000. The Eighth Circuit rejected the argument because (1) "a 'precisely drawn, detailed statute [—the CDA—] preempts more general remedies,'" *id.* at 1001 (quoting *Brown*, 425 U.S. at 834); and (2) the CDA contains a provision (41 U.S.C. § 602(b), to be recodified at 41 U.S.C. § 7102(b)) that exempts disputes over certain specific contracts formed by the Tennessee Valley Authority (whose contract contains a sue and be sued clause). "[I]f Congress had intended sue and be sued clauses to enable parties to escape the exclusive jurisdiction provided by the CDA and sue in federal district court, it would not have needed to specify in 41 U.S.C. § 602(b) that disputes over some contracts formed by the Tennessee Valley Authority . . . are exempted from the CDA." *Id.*; *see also Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890-92 (6th Cir. 1998) (sue and be sued clause in SBA legislation did not provide district court jurisdiction for contract claim); *A&S Council Oil Co., v. Lader*, 56 F.3d 234, 241-42 (D.C. Cir. 1995) (same); *United States v. J&E Salvage Co.*, 55 F.3d 985, 988 (4th Cir. 1995) (finding contract actions against USPS barred from district court without mention of PRA provisions); *Jackson v. U.S. Postal Serv.*, 799 F.2d 1018, 1022 (5th Cir. 1986) (stating without analysis that the enactment of the CDA in 1978 removed concurrent jurisdiction over suits against the USPS from the federal district courts); *but see In re Liberty Constr.*, 9 F.3d 800, 801-02 (9th Cir. 1993) (SBA's sue and be sued clause provided an independent statutory grant of jurisdiction in federal district court); *Wright v. U.S. Postal Serv.*, 29 F.3d 1426, 1429-30 (9th Cir. 1994) (applying reasoning of *Liberty Construction* to USPS based on 39 U.S.C. § 401(1)); *Marine Coatings of Ala., Inc. v. United States*, 932 F.2d 1370, 1377 (11th Cir. 1991) (contract claim against the government could proceed in district court, but only because of jurisdiction

14

through the Maritime Lien Act).

The opinions cited above generally analyzed the relationship of the CDA to § 401(1) without any analysis of § 409(a), much less any analysis of whether § 409(a) provided a jurisdictional grant separate from § 401(1). *Licata*, on the other hand, instructs that § 409(a) is the section of the PRA addressing subject matter jurisdiction in the federal district courts, and § 401(1) addresses only the USPS's waiver of sovereign immunity, *Licata*, 33 F.3d at 262. Accordingly, our concern is with § 409(a), and the cases cited above are not directly on point.

That said, we are persuaded by the reasoning of those cases which conclude that the CDA bars district court jurisdiction, despite the jurisdictional grant in § 409(a). The CDA was enacted in 1978, later in time than the PRA, which was enacted in 1970. The provisions of the CDA governing jurisdiction are both more recently and more precisely drawn than the terms of the PRA, *compare* Pub. L. No. 111-350, § 3, 124 Stat. 3677, 3817-20 (2011) (to be codified at 41 U.S.C. §§ 7103-7104), *with* 39 U.S.C. § 409(a), and "a specific provision will prevail over a general one." *In re Phila. Newspapers,* 599 F.3d at 328. Further, the CDA specifically lists several types of contracts that are excluded from its coverage, and "nowhere does the statute exclude contracts with the USPS from coverage." *See Prefab Prods., Inc. v. U.S. Postal Serv.*, 600 F. Supp. 89, 91-92 (S.D. Fla. 1984) (citing, as examples of excluded contracts, the former 41 U.S.C. §§ 602(b) (to be recodified at § 7102(b)) (certain Tennessee Valley Authority contracts), 602(c) (to be recodified at § 7102(c)) (certain contracts with foreign governments), and 603 (to be recodified at § 7102(d)) (certain maritime contracts)). Finally, and importantly, a ruling that would permit contract claims against the USPS to be heard in the federal district courts and thereafter in the twelve courts of appeals would undermine the policy goals of the CDA—to collect contract disputes against the government in a forum, be it the Postal Service Board of Contract Appeals or in the Court of Claims, with both the requisite expertise and the ability to provide consistency in applying the laws related to

15

government contracts.

We conclude that because the CDA is a statutory bar to jurisdiction over breach of contract claims against the USPS in the federal district courts, the District Court properly dismissed the complaint for lack of subject matter jurisdiction.

## III.

The order of the District Court will be affirmed.