**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 13, 2012

No. 10-41296

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

RENDA MARINE, INC.,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before BENAVIDES and PRADO, Circuit Judges, and ALVAREZ, District Judge.[*]

BENAVIDES, Circuit Judge:

In this case, Renda Marine, Inc. ("Renda") appeals the district court's denial of its motion for partial dismissal for lack of subject matter jurisdiction and motion for partial summary judgment. Renda also appeals the district court's grant of the Government's motion for judgment on the pleadings. For the following reasons, we AFFIRM.

---

[*] District Judge of the Southern District of Texas, sitting by designation.

No. 10-41296

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October 1998, Renda contracted with the Army Corps of Engineers to dredge a portion of the Houston Ship Channel and to construct containment levees and other structures at a disposal facility for dredge material. Renda experienced difficulties with the dredging and construction work, including allegedly unexpected site conditions that made completion of the work at the original contract price impossible. Renda submitted its claims for additional compensation to a contracting officer ("CO") pursuant to the Contracts Dispute Act ("CDA"), 41 U.S.C. § 601, *et seq.*[1] The CO issued a unilateral contract modification in favor of Renda that increased the contract price by $3,083,833. The Army Corps of Engineers paid Renda this amount. Unsatisfied with the decision, Renda filed suit in the Court of Federal Claims ("CFC") to recover an additional $906,364. The CFC determined that Renda was entitled to neither the additional $906,364 it sought, nor the equitable adjustment of $3,083,833 made by the CO.

While Renda's modification suit was pending before the CFC, the CO issued a final decision on six different claims the Government had brought against Renda for post-termination costs of completing certain aspects of the work originally covered by the contract. The CO granted the total amount of those claims, which was $11,860,016. The CO's decision also stated that the Government withheld $259,840.85 in retainage. Renda did not appeal this decision directly. Rather, on July 1, 2004, Renda sought leave to amend its complaint in the ongoing CFC litigation to challenge the CO's decision granting

---

[1] At the time of the district court's decision, the CDA was codified at 41 U.S.C. §§ 601-613. On January 4, 2011, the CDA was revised and published as 41 U.S.C. §§ 7101-7109. This opinion will reference the previous section numbers, in order to remain consistent with the district court opinion.

No. 10-41296

the Government $11,860,016.  The CFC denied Renda's motion and the Federal Circuit affirmed that denial.

On November 24, 2008 the Government filed the present lawsuit in federal district court, seeking to enforce the decisions of the CFC.  In Count I, the Government alleges that Renda owes it $11,860,016, pursuant to the CO's decision on the six counterclaims.  In Count II, the Government seeks repayment of $3,083,833—the amount paid to Renda in excess of the original contract price—based on the CFC's determination that Renda was not entitled to any equitable adjustment of the contract price.

Renda filed a motion for partial dismissal, arguing that the district court lacked subject matter jurisdiction over Count II of the complaint because the Government allegedly failed to comply with the requirements of the CDA. Renda also filed a motion for partial summary judgment, arguing that the statute of limitations barred Count I.  On September 30, 2010, the district court denied Renda's motions, granted the Government's motion for judgment on the pleadings on both claims, and entered judgment against Renda.  The district court held that it had jurisdiction to enforce the CFC's decision that Renda was not entitled to the $3,083,833 the Government had paid it, and that the Government had timely filed its suit to enforce the $11,860,016 judgment against Renda.  The district court also held that Renda was not entitled to any offset of the Government's recovery based on funds the Government had kept in retainage.  Renda then timely filed this appeal of the district court's judgment.

## II. STANDARD OF REVIEW

A challenge to this court's subject matter jurisdiction may be raised at any time on appeal.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 298 n.6 (5th Cir. 2007).  When considering a motion to dismiss for lack of subject matter jurisdiction, a district court may consider: "(1) the

complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The party asserting jurisdiction has the burden of proof. *Ramming*, 281 F.3d at 161.

We review *de novo* a district court's grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Brittan Communs. Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). "[W]e must look only to the pleadings and accept all allegations contained therein as true." *Id.* "The issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

We also apply a *de novo* standard of review to a motion to dismiss under Rule 12(b)(1), and motions for summary judgment under Rule 56. *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A factual dispute is 'genuine' where a reasonable party would return a verdict for the non-moving party." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 282 (5th Cir. 2003) (citation omitted). In considering a summary judgment motion, we view the evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

No. 10-41296

## III. ANALYSIS

### A. The Contract Disputes Act

"The Contract Disputes Act is a comprehensive statutory scheme for resolving contractual conflicts between the United States and government contractors." *United States v. J&E Salvage Co.*, 55 F.3d 985, 987 (4th Cir. 1995); *Menominee Indian Tribe v. United States*, 614 F.3d 519, 521 (D.C. Cir. 2010) (accord); *Anselma Crossing, L.P. v. United States Postal Serv.*, 637 F.3d 238, 246 (3d Cir. 2011) (stating that "the policy goals of the CDA [are] to collect contract disputes against the government in a forum . . . with both the requisite expertise and the ability to provide consistency in applying the laws related to government contracts"). The CDA applies to any express or implied contract entered into by an executive agency for: "(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair or maintenance of real property; or, (4) the disposal of personal property." 41 U.S.C. § 602(a). "It is well-established therefore that disguised contract actions may not escape the CDA." *J&E Salvage Co.*, 55 F.3d at 988 (noting that the source of the rights the government sought to vindicate were based in contract, even though the government styled its action as one sounding in tort); *Trevino v. Gen. Dynamics Corp*, 865 F.2d 1474, 1489 (5th Cir. 1989) (finding claim subject to CDA, as essence of claim was to obtain money from the government).

The CDA was intended "to streamline the settlement of controversies over federal government contracts," and it "generally affords private contractors a two-step review process." *Bethlehem Steel Corp. v. Avondale Shipyards, Inc.*, 951 F.2d 92, 93 (5th Cir. 1992). First, there must be a final decision by a CO on a claim before that claim can be submitted to a federal court. *Trevino*, 865 F.2d at 1489 ("The decision, or failure to decide, by a contracting officer is an absolute jurisdictional prerequisite to filing a suit under the Contract Disputes Act."); *see*

No. 10-41296

*also, e.g., J&E Salvage Co.,* 55 F.3d at 987; *Menominee Indian Tribe*, 614 F.3d at 521; *Sharman Co. v. United States*, 2 F.3d 1564, 1566 (Fed. Cir. 1993), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995) (en banc)[2]; *Transamerica Ins. Corp. ex rel. Stroup Sheet Metal Works v. United States*, 28 Fed. Cl. 418, 422 (1993). After a CO has issued a decision, a party may appeal that decision to the relevant board of contract appeals within 90 days, or file suit in the CFC within 12 months. *Menominee Indian Tribe*, 614 F.3d at 521.

A claim has been defined as "the assertion as a matter of right to a sum certain as presently due and owing, on which there was a final decision by the contracting officer." *Sharman Co.*, 2 F.3d at 1567; *see also Joseph Morton Co. v. United States*, 757 F.2d 1273, 1281 (Fed. Cir. 1985) (stating that the word "claim" does not mean "the whole case between the contractor and the Government," but instead, it means "each claim under the CDA for money that is one part of a divisible case."); *United States v. Intrados/Int'l Mgmt. Grp.*, 277 F. Supp. 2d 55, 64 (D.D.C. 2003) ("A valid claim submitted to a contracting officer includes such routine submissions as 'vouchers, invoices, and similar requests for payment[, which] are submitted for work done or equipment delivered by the contractor in accordance with the expected or scheduled progression of contract performance.'" (quoting *James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1542 (Fed. Cir. 1996) (internal quotation marks and citation omitted))). The Federal Acquisitions Regulation ("FAR")[3] defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the

---

[2] The Federal Circuit Court of Appeals has exclusive jurisdiction over appeals from agency boards of contract appeals in CDA cases, and from the CFC. 28 U.S.C. § 1295(3), (10).

[3] "The Federal Acquisitions Regulation applies to all acquisitions as defined in part 2 of the FAR, except where expressly excluded." 48 C.F.R. § 1.104.

6

No. 10-41296

adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101; *see also In re Remington Rand Corp.*, 836 F.2d 825, 830 (3d Cir. 1988) (citing FAR definition).

## B.  Count I

In Count I, the Government seeks to collect the $11,860,016 that the CO determined Renda owed for the post-termination costs of completing work originally covered by the contract.  In the district court, Renda argued that the suit was filed after the statute of limitations had run.  Section 2415 of Title 28 of the United States Code provides alternative limitations periods for government contract actions for money damages. The Government must file suit either "within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later."  28 U.S.C. § 2415(a).

In finding for the Government, the district court considered both alternative statute of limitations periods.  Although noting that a contract claim generally accrues at the time of breach, the district court agreed with the Government's argument that it was not suing for breach of contract, but rather to enforce the CO's final decision issued on November 26, 2002.  Therefore, under the six-year limitations period, the Government's suit, filed on November 24, 2008, appeared timely.  However, the district court ultimately relied on the one-year savings clause after finding that it provided the Government with the most time to file suit.  The district court held that an appeal to the CFC constituted an applicable administrative proceeding triggering the savings clause.  The court noted that it would not have had jurisdiction to consider the Government's claims against Renda until the Federal Circuit had affirmed the CFC's denial of Renda's motion to amend its complaint in the separate, ongoing CFC litigation regarding the $3,083,833 the Government had overpaid Renda.  The Government could not enforce the CO's decision until it was clear that

7

No. 10-41296

Renda was barred from challenging it. The Federal Circuit's decision affirming the CFC's denial of Renda's leave to amend its complaint was rendered on December 11, 2007. Therefore, according to the district court, the Government's suit was timely.

Here, Renda again argues that the statute of limitations had run on the Government's ability to collect the $11,860,016, because the Government had to file its claim within six years of Renda's breach of contract. In addition, Renda argues that the applicable administrative proceedings came to an end on November 26, 2003, when the one-year time period within which Renda could appeal the CO's decision elapsed. Because Renda did not timely appeal, it argues that the CO's decision became "final and conclusive and not subject to review by any forum, tribunal, or Government agency" one year after the decision issued. 41 U.S.C. §§ 605(b), 609(a). According to Renda, its efforts to collaterally attack the CO's decision by amending its complaint in separate CFC litigation cannot constitute "administrative proceedings *required by contract or law*." 28 U.S.C. § 2415(a) (emphasis added). The Government responds that the claim it seeks to enforce is not the contract claim, but the CO's decision. Thus, the six-year statute of limitations began to run when the CO issued that decision, not when Renda breached the contract, because the right to sue did not accrue until the CO had determined that Renda owed the Government $11,860,016. Alternatively, the Government contends that Renda's Court of Federal Claims and Federal Circuit litigation constitute applicable administrative proceedings because Renda was attempting to undo the CO's decision during those proceedings.

Renda is correct that, traditionally, a contract claim accrues when the contract is breached. *See FDIC v. Belli*, 981 F.2d 838, 840 (5th Cir. 1993) (stating that "the ordinary usage of the term 'accrues' is that a cause of action 'accrues' when 'it comes into existence'" (citation omitted)); *Phillips Petroleum*

8

No. 10-41296

*Co. v. Lujan*, 4 F.3d 858, 861 (10th Cir. 1993) (holding that the government's right of action accrued on the date of breach); *United States v. Kass*, 740 F.2d 1493, 1497 (11th Cir. 1984) (same); *see also* 48 C.F.R. § 33.201 ("Accrual of a claim means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known."). However, we agree with the district court that it makes little sense to hold that the Government's cause of action for Renda's breach of contract and separate cause of action to enforce a decision regarding that breach accrued on the same date. The only appellate court to deal with a case on-point came to the same conclusion. In *United States v. Suntip*, the Ninth Circuit held that the statute of limitations did not bar a suit to enforce a CO's decision because the right of action did not accrue until the CO issued its decision on the contract claim. 82 F.3d 1468, 1475 (9th Cir. 1996). Distinguishing between a claim on the contract and an action to enforce a CO's decision, the court noted that "the government's present suit is similar to a suit on a judgment," *id.* at 1474, and depended "upon its contracting officers' decisions being final, conclusive, and not subject to further challenge on the merits," *id.* at 1475. Because "the government cannot take legal action on its claim until it first makes it the subject of a decision by a contracting officer[,] . . . . [t]ime cannot run against the government until it is procedurally possible for it to sue." *Id.* at 1476 (internal quotation marks and citations omitted); *see also United States v. Kasler Elec. Co.*, 123 F.3d 341, 344 (6th Cir. 1997) (citing *Suntip* and noting that "the government merely sought summary enforcement of an order that it contends is final and unreviewable"). Therefore, because the Government filed suit within six years of the CO's decision that Renda owed the Government $11,860,016, its suit was timely.

Our reading of the statute of limitations in 28 U.S.C. § 2415(a) (and that of the Ninth Circuit) is admittedly imperfect. If the Government has six years

from a CO's decision to file a suit to enforce it, then the savings clause serves no purpose in a situation such as this one. This is because the CO's decision becomes final one year after it is rendered if it is not timely appealed, such that the savings clause, which allows the Government one year from a final decision in an applicable administrative proceeding to file suit, saves nothing where the Government already has six years from the date of the decision to file. *See United States v. Am. States Ins. Co.*, 252 F.3d 1268, 1273 (11th Cir. 2001) ("Allowing the Government six years from a final decision in which to sue would render this one-year provision meaningless."). Even in situations where a party appeals the CO's decision, it is unlikely that it will routinely take the CFC longer than six years from the date of that decision (rather than the date of breach) to rule on the appeal. For instance, in the separate action that forms the basis for Count II of this suit, the CFC issued its decision on July 28, 2005–slightly more than four years after the contract modification issued by the CO on March 14, 2001. *See Renda Marine, Inc. v. United States*, 66 Fed.Cl. 639 (Fed. Cl. 2005). While a further appeal to the Federal Circuit could conceivably draw the dispute out beyond six years, it is not likely that an appeal to an Article III court constitutes an "applicable administrative proceedin[g]." § 2415(a). *See* S.Rep. No. 89–1328, at 2504 (1966) (stating that the savings clause was necessary because "[a]n *administrative proceeding* ordinarily consumes a considerable period of time) (emphasis added); *Suntip*, 82 F.3d at 1476-77 (finding that an action in the Court of Federal Claims is an "administrative proceeding," in part because the Federal Courts Improvement Act of 1982 changed the CFC from an Article III to an Article I court). Nevertheless, Congress chose the language in § 2415(a), allowing the Government to file suit "within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later," and there may be cases in which related administrative proceedings

stretch out beyond six years from a CO's decision. Furthermore, notwithstanding the identified difficulties with the statute, Congress provided six years for the Government to bring a claim. The Government cannot seek to enforce a CO's decision until that decision has been rendered, nor do the federal courts have jurisdiction until that time. Thus, this suit clearly falls within the statute of limitations.

While we ultimately agree with the district court's holding that the Government's suit was timely, we do not agree that administrative proceedings relating to Count I terminated when the Federal Circuit affirmed the CFC's denial of Renda's motion to amend its complaint in the separate, ongoing litigation. Such a collateral attack by Renda was not "required by law," § 2415(a), and the CO's decision became final and enforceable one year after its issuance, when Renda failed to timely appeal. Consequently, the savings clause would have granted the Government only one year from that date to file suit, or until November 26, 2004. Furthermore, the district court found that the Government's suit was timely because it was filed within one year of the Federal Circuit's ruling, but as discussed above, we are not convinced that an appeal to the Federal Circuit constitutes "an applicable administrative proceedin[g]." *Id.* Consequently, we hold that the Government's suit to collect the $11,860,016 owed by Renda was timely because it was filed within six years of the CO's decision, rendered on November 26, 2002.

## C. Renda's Set-Off Claim

Renda argues that even if Count I is not barred by the statute of limitations, the Government's recovery should be reduced by $259,840.85, an amount Renda claims the Corps withheld as a set-off from amounts earned by and owed to Renda. The district court rightly noted that offset is an affirmative defense, *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 n.36 (5th Cir. 2001), such that it is Renda's burden to "establish beyond peradventure *all* of the essential

elements of the defense," *Addicks Serv., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010) (emphasis original) (quotation marks and citations omitted). According to the district court, the CO's decision letter stated that the $259,840.85 was an amount remaining in retainage, and "[n]othing in the contracting officer's decision letter indicates that this amount is intended to offset the amounts claimed in the Corps' $11,860,016.00 counterclaim." Therefore, in order to consider Renda's claim, the district court would have had to revisit the merits of the CO's decision, which it did not have jurisdiction to do. *See Kasler*, 123 F.3d at 344 (stating that appeal to an agency board or the CFC are the only options for challenging a CO's decision, and "the merits of the contracting officer's decision itself were not within the jurisdiction of the district court").

We agree with the district court that the CO's decision letter does not expressly state that the $259,840.85 the Government kept in retainage was intended to offset the $11,860,016 that Renda owed the Government. The letter mentions the retainage in the section on liquidated damages. It states that "the Government is withholding approximately $259,840.85 in retainage," and in the following sentence says that it is also "withholding $236,016.00 in liquidated damages." Those liquidated damages are then calculated into the $11,860,016 total that Renda owes. While the retainage and damages related to the claim are discussed together, the CO never clarifies whether the retainage should be applied to the total owed by Renda. Thus, as the district court held, it is not obvious from the letter whether the retainage was an offset, and any effort to make that determination would require a revisitation of the merits of the CO's decision. Renda did not appeal that decision, and cannot now collaterally attack it through this federal suit. Therefore, because Renda has failed to prove its set-off claim "beyond peradventure," we affirm the district court's denial of its motion for partial summary judgment on this claim.

No. 10-41296

## D.  Count II

In Count II, the Government seeks to enforce the CFC's decision that the Government overpaid Renda $3,083,833.  Renda argues that the district court lacked subject matter jurisdiction over Count II because the Government never made an affirmative claim to the CO for repayment of the $3,083,833, nor did the Government make a counterclaim for that amount in the CFC.  Because only Renda's claim for additional compensation was at issue in the CFC, and the CO did not issue a written decision awarding any amount to the Government, Renda argues that the district court lacked jurisdiction over the Government's suit.

The district court rejected Renda's argument that the Government had to file its own administrative claim to recover the $3,083,833.  As the district court noted, the CDA requires that "[a]ll claims by a contractor against the government related to a contract shall be in writing and shall be submitted to the contracting officer for a decision[;] [a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer."  41 U.S.C. § 605(a).  Thus, the language of the statute differentiates between the two parties, requiring that a contractor submit any claim to the CO, while a claim by the government must only be the subject of a CO's decision.  The district court therefore ruled that the Government did not need to file a separate claim to recover the money it had already paid Renda, because the Government's claim for repayment had been "the subject of a decision by the contracting officer."  Accordingly, no further action was required on the Government's part.

In *United States v. T & W Edmier Corp.*, 465 F.3d 764 (7th Cir. 2006), cited by the district court in support of its decision, the Seventh Circuit held that the CDA "does not require the United States to file an administrative claim in *any* situation, as far as we can make out," including "in order to recover an overpayment that ensues from a decision by the Board that the United States

13

owes less than the contracting officer awarded."[4]  *Id*. at 766.  Instead, the Seventh Circuit found that "[w]hat is required when the government seeks a payment from the contractor is not an independent claim, but a decision ."  *Id*. The court in *Edmier* ruled that "the Contract Disputes Act allows the appellate board to make an independent decision and decrease as well as increase the award" granted by a CO.  *Id*.  Because a dispute over a CO's decision thus receives "full administrative consideration," the Seventh Circuit held that "there is no reason to rerun the process before the United States may collect any net balance in its favor."  *Id*.  *But cf. Wilner v. United States*, 26 Cl. Ct. 260, 279 (1992) (finding that the CDA "requires such a written claim by the Government as a prerequisite to the Government's assertion of a claim for affirmative relief [seeking repayment of sums already paid]"), *vacated on other grounds and remanded*, 24 F.3d 1397 (Fed. Cir. 1994).[5]  Other courts have similarly endorsed the CFC's ability to either increase or decrease the appealed CO's award.  *See Assurance Co. v. United States*, 813 F.2d 1202, 1206 (Fed. Cir. 1987) ("We must conclude from the face of the Disputes Act that a contract appeals board can, with respect to a contracting officer's decision that has been appealed to it, reduce as well as increase the award made by that contracting officer.")*; Transamerica Ins. Corp.*, 28 Fed. Cl. at 422 ("Furthermore, on appeal 'the contracting officer's award is not to be treated as if it were the unappealed

---

[4] *Edmier* involved an appeal to the Armed Services Board of Contract Appeals.  The CDA authorizes appeals of a CO's decision to either an agency board, or to the Court of Federal Claims.  *See* 41 U.S.C. § 606(a)-(b).  The CDA treats such appeals equally, and subjects them to the same requirements.

[5] The district court distinguished *Wilner* on the basis that "the court determined the sums sought by the government were the result of unilateral modifications, not the contracting officer's subsequent final decision that had been appealed," while "the CFC considered Renda's Flare Area claim (the modification and claim for additional relief) as a unitary claim, not separate decisions by the contracting officer."  We agree that *Wilner* presented a situation different than that here, where the CO's entire decision is at issue.

determination of a lower tribunal which is owed special deference on appeal . . . [and a reviewing factfinder may] reduce as well as increase the award made by the contracting officer . . . .'" (quoting *Assurance Co.*, 813 F.2d at 1206)).

Here, Renda initiated its claim for $4,691,688, and that claim was subject to a decision by a CO.  When Renda filed suit in the CFC seeking additional money, the CFC considered the entire amount awarded pursuant to the modification, and ultimately determined that Renda was entitled to less than the CO had granted.  We agree with the CFC's determination that Renda's appeal put its entire award at issue.  Furthermore, we find that the district court's reading of the statute, mirroring the Seventh Circuit's interpretation in *Edmier*, is in keeping with one of the policies animating the CDA: efficiency.  *See* S.Rep. No. 95-1118, at 3 (stating that "the complexity of government procurement demands the enactment of a more efficient procedure").  It would be wholly inefficient to require the Government to submit a separate claim to a CO for repayment of a sum to which the CFC and Federal Circuit have already ruled the Government is entitled, especially since the CO would be bound by those decisions.

Consequently, we hold that the district court had subject matter jurisdiction over the Government's claim for repayment of the $3,083,833 it had overpaid Renda, and the district court properly granted judgment in the Government's favor on that claim.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.